J-A16013-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID WOODS, | |
| Appellant | No. 244 EDA 2016 |

Appeal from the Judgment of Sentence Entered December 17, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000818-2014

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 24, 2018**

Appellant, David Woods, appeals from the judgment of sentence of an aggregate term of 20 to 40 years' incarceration, imposed after a jury convicted him of aggravated assault and robbery.  Appellant challenges the trial court's decision to admit certain evidence.  After careful review, we affirm.

Because the trial court did not provide a summary of the facts of this case in its Pa.R.A.P. 1925(a) opinion, we adopt the Commonwealth's recitation, which aligns with Appellant's version of the facts in all pertinent respects:

> On December 16, 2013, at about 8:00 p.m., 67-year-old Loretta Marcello was walking home from her mother's house on the 2400 block of 15th Street in Philadelphia, and heard a noise behind her.  When she turned around, [Appellant] punched her in the face twice.  She fell and hit her head on a car.  [Appellant] grabbed her bag and fled.

The victim, bleeding from her eye, crawled to the neighbor's house, and banged on the front door, screaming that she was just robbed. A few people came out of the house and called 911 to report the incident. When the first responding officers arrived at the scene, the victim described her assailant as a black male with a brownish tannish jacket. Medics thereafter transported the victim to Thomas Jefferson[] [Hospital's] trauma unit, where she was hospitalized for seven days with bleeding from her eye, a fractured hand, and a neck injury[.] (N.T.[,] 8/4/15, [at] 36-52)[.]

A witness to the assault had chased after [Appellant] and saw him get into a silver car with license plate number JKJ3505. The witness returned to the scene and provided a description of the car to the responding officers, who gave flash of the information over the police broadband. Officer [Daniel] Farrelly was on routine patrol when he heard the report, and determined that the assailant's car was registered to a home on the 22nd block of Cross Street - only one mile from the assault. He drove with his partner to the location, observed a parked car that matched the description of the one the assailant fled in, and approached the vehicle. [Appellant] was sitting in the driver's seat, counting money, and wearing a tan jacket. Officer Farrelly asked him to get out of the car and, after determining that he matched the description of the perpetrator, [the officer] placed [Appellant] under arrest. The police then transported him to the hospital, but the victim did not identify him as her assailant. Police later searched [Appellant's] car pursuant to a search warrant and recovered the victim's purse, driver's license, credit cards, and senior citizen SEPTA card[.] (N.T.[,] 8/5/15, [at] 10-39, 60, 63-66, 119-[]23).

On August 4, 2015, [Appellant] was tried by a jury sitting before the Honorable Angelo J. Foglietta. The Commonwealth presented the testimony of the victim and several police officers. The jury heard 911 tapes of the neighbors reporting the assault, and radio tapes of police communications that contained the flash description of [Appellant's] car.[1] Following a three day trial, the jury convicted [Appellant] of aggravated assault and robbery. On December 17, 2015, the court sentenced him to [10] to [20] years of incarceration for aggravated assault, and a consecutive term of [10] to [20] years of incarceration for robbery.

[1] [Appellant] litigated a motion to suppress the 911 tapes and the radio tapes of police communications. The lower

court found that both tapes were admissible (N.T.[,] 8/4/15, [at] 17-18; 8/5/15, [at] 8).

Commonwealth's Brief at 2-4.

Appellant filed a timely notice of appeal. The court then ordered him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal within 21 days of Appellant's receipt of the transcripts. On July 26, 2016, the trial court issued a Rule 1925(a) opinion stating that all of the transcripts had been completed, yet Appellant had not filed a Rule 1925(b) statement. Consequently, the court deemed his issues waived. Appellant thereafter filed with this Court a petition to remand, arguing that he had not received certain transcripts as stated by the court. On September 19, 2016, this Court remanded Appellant's case, directing him to file a Rule 1925(b) statement within 21 days, and ordering the trial court to file a Rule 1925(a) opinion within 30 days of receiving Appellant's concise statement. Appellant timely filed his Rule 1925(b) statement on October 7, 2016. Unexplainably, the trial court did not file its Rule 1925(a) opinion until one year after receiving Appellant's concise statement.

Herein, Appellant raises two issues for our review:

1. Did the lower court err in permitting the 911 tapes of persons calling to report a crime and request an ambulance to be played in court and admitted in[to] evidence, as these phone calls relayed inadmissible hearsay statements concerning the manner in which the complainant sustained her injuries and the identification of the alleged perpetrator of the assault and robbery?

2. Did not the lower court err in permitting the radio tapes of police communications to be played in court and admitted in[to] evidence, as these communications relayed inadmissible

hearsay statements purportedly obtained from an unidentified witness concerning the identification of the perpetrator and the vehicle in which the perpetrator allegedly fled?

Appellant's Brief at 3.

Both of Appellant's issues challenge the trial court's admission of certain evidence and, therefore, we will address his claims together.

Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. **Commonwealth v. Hunzer**, 868 A.2d 498 (Pa. Super. 2005). Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. **Id.**

**Commonwealth v. Young**, 989 A.2d 920, 924 (Pa. Super. 2010) (citation omitted). Our Supreme Court has also explained that,

[i]n the event of an erroneous admission of evidence, a verdict can still be sustained if the error was harmless. **See Commonwealth v. Wright**, 599 Pa. 270, 961 A.2d 119, 144 (2008). An error is harmless if it could not have contributed to the verdict, or stated conversely, an error cannot be harmless if there is a reasonable possibility the error might have contributed to the conviction. **Id.** We have found harmless error where:

"(1) the error did not prejudice the defendant or the prejudice was *de minimis;*

(2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or

(3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict."

**Id.** (quoting **Commonwealth v. Young**, 561 Pa. 34, 748 A.2d 166, 193 (1999) (citation omitted)). The Commonwealth has the

burden of proving harmless error beyond a reasonable doubt. ***Id.*** at 143.

***Commonwealth v. Poplawski***, 130 A.3d 697, 716 (Pa. 2015).

Appellant first contends that the trial court erred by admitting recordings of 911 calls made by unidentified individuals to report the victim's assault and robbery. Appellant argues that these tapes contained inadmissible hearsay statements, "including that the complainant was punched, mugged, hit and robbed, that the perpetrator was a black male, and that other witnesses had seen the perpetrator leave in a vehicle and had obtained the license plate tag number of that vehicle." Appellant's Brief at 27. The trial court concluded that the statements on the tapes constituted hearsay, but were admissible under either of the following exceptions to the rule precluding hearsay:

> **(1)** **Present Sense Impression.** A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.
>
> …
>
> **(2)** **Excited Utterance.** A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.

Pa.R.E. 803(1), (2). On appeal, Appellant avers that neither of these exceptions applied to the at-issue hearsay statements, because there was no evidence "that the 911 callers had personally observed the matters about which they were talking, at [least] as to the actions of the assailant and as to the identification of the assailant and his vehicle, including the tag number of that vehicle." Appellant's Brief at 30.

Second, Appellant attacks the admission of "police radio tapes of numerous officers' communications involving the investigation of the assault of the complainant." *Id.* at 33. Appellant asserts that "[t]he police communications conveyed hearsay information obtained from individuals who did not testify at trial, as well as hearsay information procured from police computers and databases, including that the assailant was a black male wearing a tan jacket who fled the scene in a silver SUV with a certain license plate tag number, and that the tag number was registered to a vehicle at [Appellant's] home address (near where [Appellant] was apprehended by the police, inside the vehicle in question)." *Id.* In deciding to admit this evidence, the trial court reasoned that the recordings were 'course of conduct' evidence, as they "were offered to show how the police came into contact with [Appellant] by the relay of the vehicle's license plate number." Trial Court Opinion, 10/17/17, at 5. The court noted that "[i]t is well-established that an out-of-court statement offered to explain a course of conduct is not hearsay." *Id.* (citing *Commonwealth v. Sampson*, 311 A.2d 624 (Pa. 1973); *Commonwealth v. Ryan*, 384 A.2d 1243 (Pa. Super. 1978). While Appellant seemingly concedes that the tapes constituted course-of-conduct evidence, *see* Appellant's Brief at 35, he contends that they should not have been admitted as their probative value was outweighed by their prejudicial impact.

We need not discuss whether the tapes of the 911 calls, or the recorded police communications, were properly admitted by the court because, even if not, the Commonwealth has demonstrated that the admission of that evidence

was harmless error. First, in regard to the 911 calls, the Commonwealth avers

that,

> the information relayed in the 911 calls was cumulative of other evidence admitted at trial. The victim testified that her assailant was a black male wearing a tan jacket, and that he punched her in the face twice[.] (N.T.[,] 8/4/15, [at] 42-47). The first responding officer then testified that a purported witness approached him at the scene and gave him a license plate number and description of [Appellant's] car. (N.T.[,] 8/5/15, [at] 12). The independent testimony of the victim and the first responding officer relayed all of the information contained in the 911 calls that [Appellant] challenges as inadmissible hearsay. Thus, the calls were merely cumulative of other untainted evidence.

Commonwealth's Brief at 10. Having reviewed the portions of the record cited

by the Commonwealth, we agree with its position that the hearsay statements

in the 911 calls were cumulative of other evidence admitted at trial.

Additionally, the Commonwealth claims that the admission of the 911

calls, and the recordings of the police communications, were harmless because

the evidence of Appellant's guilt was overwhelming. Pertaining to the 911

calls, it explains:

> Police found [Appellant] in a car that was located less than a five minute drive from the scene of the assault[.] (N.T.[,] 8/5/15, [at] 34). The officers who received the flash information responded in less than a minute and found [Appellant] reclined in the driver's seat, counting dollar bills[.] ([*Id.* at] 62). He was wearing a tan jacket, as the victim reported to police. Inside [Appellant's] car, officers recovered the victim's purse, her driver's license, credit cards, senior citizen SEPTA identification, and $273. The amount of money recovered matched the amount the victim reported she had in her purse when she was assaulted. Given the overwhelming evidence against [Appellant], the trial court's decision to admit the 911 tapes did not entitle [Appellant] to relief.

Commonwealth's Brief at 11. The Commonwealth reiterates this same argument regarding the admission of the police communication evidence, stating:

> [T]he police recordings were only a small part of two officers' testimony over the course of a three[-]day trial, and the other evidence against [Appellant] was overwhelming. As discussed in the above section, police found [Appellant] in possession of the victim's purse, wallet, identification cards, and other belongings less than one minute after [the] flash was given. [Appellant] was reclined in the front seat of his car, counting the victim's money, and wearing a tan jacket, as described by the victim. The amount of money [Appellant] possessed matched the quantity that the victim said she possessed when she was assaulted. Thus, in light of the direct evidence linking [Appellant] to the crime, this is not a case where the "course of conduct" [evidence] should have been excluded….

*Id.* at 14-15.

In response to the Commonwealth's position, Appellant avers that the at-issue recordings were the only evidence linking his vehicle to the scene of the crime. He argues that without it, the jury would have likely only convicted him of a less serious offense, like receiving stolen property, especially given "some significant discrepancies in the evidence…." Appellant's Brief at 41. Specifically, Appellant claims that the victim described the coat of the assailant as being "a down coat with a fur collar[,]" but Appellant's coat "was neither down nor had fur…." *Id.* at 41. Appellant also asserts that "there were discrepancies regarding the reported tag number of the car in which the assailant allegedly fled, with the number first being reported as KJ3505 and later being reported as JKJ3505, the latter being the tag number of the car in

which [Appellant] was seated just before he was arrested." *Id.* While Appellant acknowledges that "this discrepancy was explained by an officer who claimed that the unidentified male witness who provided the information first gave one tag number, but then later remembered the first letter of the tag when questioned by the police[,]" he argues that "since this unidentified witness was not present in court, the veracity of this story could not effectively be explored by the defense." *Id.* In sum, Appellant maintains that "the uncontradicted evidence was not so overwhelming that the improperly admitted, but potent, hearsay statements tying … [Appellant] to the vehicle the assailant allegedly used to flee the scene could be deemed to be insignificant." *Id.*

We disagree. Initially, Appellant ignores that there was other evidence, aside from the hearsay statements on the 911 calls and the police communication recordings, that linked his vehicle to the scene. Namely, the first-responding officer testified that a witness at the scene provided him a description and license plate number of the fleeing vehicle. While that witness initially forgot the first letter of the license plate, he provided six numbers of the plate that matched the license number of Appellant's vehicle. The witness also later remembered the first letter on the plate, which also matched Appellant's license plate number. Additionally, the color of Appellant's coat matched that described by the victim, although she did not remember other aspects of his coat accurately. These facts, combined with Appellant's being found in close temporal and physical proximity to the scene of the robbery,

and in possession of multiple items taken from the victim, constituted overwhelming proof of his guilt. Therefore, any error in the admission of the cumulative 911 call recordings, or the police communications, was harmless. Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/18